■ BENJAMIN RICHARDSON et al., Appellants-Respondents, v RICHARD E. GRAY et al., Respondents-Appellants, et al., Defendants. (Action No. 1.) BENJAMIN RICHARDSON et al., Appellants-Respondents, v RICHARD E. GRAY et al., Respondents-Appellants, et al., Defendants. (Action No. 2.) [726 NYS2d 105] —Order, Supreme Court, New York County (Barry Cozier, J.), entered on or about October 18, 2000, which, *inter alia*, denied plaintiffs' motion for an order imposing additional contempt sanctions against Richard E. Gray and RAC Investors, Inc. (RAC), unanimously reversed, on the law and the facts, with costs, and the court is directed to hold a hearing, within 10 days of service of this order with notice of entry, for a determination of whether defendant Gray should be confined to prison for his contempt pursuant to Judiciary Law § 753.

Although confirming the finding that Gray, through his access to certain properties, had the financial ability to purge a prior contempt order, and that his failure to do so was "another example in the continuing pattern of bad faith demonstrated by him since the commencement of this litigation," the court abused its discretion in failing to impose additional, coercive sanctions, as contemplated in the original adjudication of contempt, for Richard E. Gray's and RAC's flagrant noncompliance with the court's prior directives.

The original contempt order directed (1) that "defendant RAC shall within 10 days of service of a copy of this order with notice of entry return to Chariot Management the sum of

$1,600,000"; and (2) that, within the same time frame "Gray shall * * * cause Chariot Investors to return to Chariot Management the sum of $505,000, shall cause Harcar to return forthwith the sum of $2,200,000 to [Energy Savings Products, Inc.] ESP, and shall cause RAC to return to Chariot Management the sum of $1,600,000."

Unsatisfied that these demands had been met, in July 1999 plaintiffs moved for a second contempt order. The court did not issue a decision until six months later, at which time it referred the matter to a referee to report on the issue of the financial ability of Gray and RAC to purge the prior order.

At the hearing, Gray testified that he owned two properties in Essex County, New York, worth about $450,000, but encumbered with mortgages in the amount of $400,000, as well as other miscellaneous assets of nominal worth. The IRS had a judgment against him and his wife in an amount, with interest and penalties, of over $2,000,000. He testified that he was living with a current wife and three children in a 13-room house on seven acres of property in Litchfield, Connecticut. He claimed that the property was owned by an entity known as CSC Recovery Corporation, and that he paid a monthly rental of $4,100, but his bank records did not demonstrate the existence of any rental payments. Gray also admitted owning a 10-room co-op at 730 Park Avenue, recently appraised at $3,600,000, with an outstanding loan in the amount of $3,650,000. He also leased an Audi automobile. His gross income, as reported in his 1996, 1997, and 1998 tax returns, was $137,017, $130,210, and $233,262, respectively. He testified that he had explored the possibility of borrowing money through his companies to repay the sums directed by the court, but had been rejected by three different lenders. The referee's report concluded that Gray was maintaining a lifestyle beyond his assets and present income, but that there was no evidence that he had the ability to personally repay the outstanding debts. It concluded, however, that Gray had access to property owned by various companies which could be used to do so.

On the issue of the actual efforts Gray had made to purge the original contempt order, the court confirmed the referee's determination that Harcar's deposit of a deed for property into escrow with ESP's attorneys did not satisfy the requirement that Harcar return a sum of $2,200,000 to ESP, where the property at issue was valued at $2,850,000, but was encumbered by a mortgage in the amount of $2,100,000. It also confirmed the referee's determination that defendants' transfer of $2,105,000 to a bank account nominally in Chariot Manage-

ment's name, was insufficient to satisfy the second aspect of the purge order, because Richard Gray exercised complete and exclusive control over the account, and there is evidence that he has since dissipated a substantial portion of its funds.

Given the amount of time that has passed since the original contempt order was entered in this case, the outrageous nature of defendant's abuse of his fiduciary duties as a corporate officer, and his seeming indifference to, and blatant disregard for, numerous judicial directives, we direct the court to hold a hearing, where Mr. Gray will have the burden of either establishing that he does not have, and has not had, the financial ability to return the requested funds, since entry of the first contempt order, or be confined to prison for contempt pursuant to Judiciary Law § 753 until such time as his outstanding debts are satisfied (*see, Talcott Factors v Larfred, Inc.*, 115 AD2d 397, *appeal dismissed* 67 NY2d 736). The hearing should also address the discrepancy revealed by the record between Mr. Gray's lavish lifestyle and his claims of financial distress. Concur—Williams, J. P., Mazzarelli, Andrias, Lerner and Saxe, JJ.